James J. JASKULA, Managing Member, Aqua Dry Waterproofing and Structural Repair, L.L.C., Appellee

v.

ESSEX INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 26, 2005.

Filed May 26, 2006.

John G. Shorall, Pittsburgh, for appellant.

David J. Weaver, Johnstown, for appellee.

BEFORE: FORD ELLIOTT, TODD, and POPOVICH, JJ.

OPINION BY TODD, J.:

¶ 1 In this declaratory judgment action, Essex Insurance Company ("Essex") appeals the April 29, 2005 order denying its motion for summary judgment and granting the cross-motion for summary judgment of James J. Jaskula, Managing Member, Aqua Dry Waterproofing and Structural Repair, L.L.C. ("Aqua Dry"). For the following reasons, we reverse.

¶ 2 The trial court provided the following summary of the factual and procedural background of this case:

During the week of May 10, 2004 through May 14, 2004, employees of [Aqua Dry] were performing a contract to waterproof the basement of a residence located in East Freedom, Pennsylvania. During the course of their work, [Aqua Dry's] employees inadvertently cut an oil line, resulting in an oil spill. Consequently, the Department of Environmental Protection [the "DEP"] ordered that the oil runoff be remedied. After hiring a third party to clean up the oil spill at a cost of $9,886.62, the owners of the East Freedom residence presented the bill to [Aqua Dry]. Upon receipt of the bill, [Aqua Dry] submitted a claim to [Essex], seeking coverage under the commercial general liability insurance policy [Aqua Dry] had through [Essex]. On June 29, 2004, [Essex] sent [Aqua Dry] a letter in which [Essex] denied coverage for the oil spill, asserting that

[Essex's] policy contains an "Absolute Pollution Exclusion" that precludes coverage for occurrences such as the one at issue.

  As a result, on or about August 17, 2004, [Aqua Dry] filed an Action in Declaratory Judgment, in which [Aqua Dry] requested that the Court decree that [Aqua Dry's] insurance policy provides coverage for the costs associated with the oil spill. Thereafter, [Aqua Dry] and [Essex] filed Cross–Motions for Summary Judgment.

(Trial Court Opinion, 4/29/05, at 1–2.) The trial court entered summary judgment in favor of Aqua Dry on April 29, 2005. This timely appeal followed in which Essex asserts that the trial court erred in granting summary judgment in favor of Aqua Dry. (*See* Appellant's Brief at 2.)

¶ 3 Preliminarily, we note that our standard of review in this declaratory judgment action is plenary because we are reviewing the trial court's legal interpretation of an insurance policy in light of claims raised in the underlying complaint. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 825 A.2d 641 (Pa.Super.2003), *appeal granted*, 577 Pa. 667, 848 A.2d 925 (2004). Furthermore, we note our standard of review of an order granting or denying a motion for summary judgment:

  We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial

court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 4 When construing the language of an insurance policy, our goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100 (1999). If the language is ambiguous, it is construed in favor of the insured, but where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Id.; Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). Contractual terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co.*, 557 Pa. at 606, 735 A.2d at 106.

¶ 5 The relevant provision of the Essex policy is as follows:

**Exclusion—Absolute Pollution:**

It is agreed this policy does not cover any claims arising out of:

\* \* \*

2. Any loss, cost or expense arising out of any:

  (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize in any way respond to, or assess the effects of pollutants; or

  (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or

neutralizing, or in any way responding to or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Essex Insurance Policy, Amendatory Endorsement, Exclusion—Absolute Pollution (Exhibit B to Complaint at 12).)[1] In particular, Essex asserts that subsection 2(a) applies under the facts of this case. For the following reasons, we agree.

¶ 6 In concluding that subsection 2(a) was inapplicable to the cleanup ordered by the DEP, the trial court reasoned as follows:

We find that [Essex's] reliance on subsection 2(a) of the "Absolute Pollution Exclusion" is misplaced, as the loss and expense incurred in this case were the result of [Aqua Dry's] ordinary operations, and not a "request, demand, or order" that [Aqua Dry] "clean up ... pollutants."

[Aqua Dry] stated that the rupture of a line (which caused the oil spill) occurred while his employees were using jackhammers during the course of a waterproofing job at an East Freedom residence. The monetary loss that arose from the oil spill therefore happened as a result of [Aqua Dry's] employees acting in the ordinary operation of business (i.e., while they were performing a waterproofing job). Thus, subsection 2(a) of the "Absolute Pollution Exclusion" is inapplicable, as we find that this subsection concerns an insured's losses from situations outside the ordinary operation of business. Furthermore, because the

loss from the oil spill occurred while [Aqua Dry's] employees were performing ordinary operations of the business, we find that it is clear as a matter of law that [Aqua Dry's] insurance policy covers the loss.

(Trial Court Opinion, 4/29/05, at 2–3 (alterations original and citation omitted).) In its brief, Aqua Dry elaborates:

[T]he exclusion relates to damages only in situations where the insured has taken an active role in monitoring, cleaning up, treating, or detoxifying pollutants as a result of a command, request, or order. In this case, the "pollutant," (the oil spill) resulted from an accidental release of oil due to a cut line which occurred in the ordinary operation of the business. Aqua Dry is a waterproofing company and it purchased liability insurance for accidents such as happened here; accidents occurring during the course of its normal waterproofing operation. The loss was *not* the result of any request, demand, or order that Aqua Dry clean up the spill.

(Appellee's Brief at 6–7 (emphasis original).)

¶ 7 Contrary to the trial court's opinion and the assertions of Aqua Dry, we conclude that the pollution exclusion unambiguously applies under the facts of this case. Exclusion 2(a) provides that the subject policy does not cover claims arising out of "[a]ny loss, cost or expense arising out of any: (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants." (Essex Insurance Policy, Amendatory Endorsement, Exclusion—Absolute Pollution.)

---

**1.** We note that, in its brief, subsection 2(a) and 2(b) were erroneously labeled 2(e) and 2(f) by Appellant. (*See* Appellant's Brief at 6.)

The facts of this case fall precisely within this language: Aqua Dry submitted a claim to Essex arising out of a "cost or expense" arising out of a "request, demand or order" by the DEP to "clean up" a pollutant, the oil. While Aqua Dry may not have been directly' ordered to clean up the oil, and while it was not the party who in fact performed the cleanup, the exclusion refers to a request or order to "any insured or *others*" and applies broadly to costs or expenses arising out of such clean-ups.

¶ 8 Furthermore, whether the spill was accidental and occurred during Aqua Dry's "ordinary operations," during its "normal waterproofing operation," or in its "ordinary operation of business," as the trial court and Aqua Dry contend, is irrelevant. The exclusion provides no such qualifiers. Nor does it apply only where "the insured has taken an active role in monitoring, cleaning up, treating, or detoxifying pollutants." (Appellee's Brief at 6.) Again, the exclusion contains no such limitations. We find the plain language of the exclusion to be dispositive.

¶ 9 Because we conclude that exclusion 2(a) unambiguously excludes coverage under the facts of this case, we must reverse the trial court and remand for the entry of judgment in favor of Essex.

¶ 10 Order entering judgment REVERSED. Case REMANDED for entry of judgment in favor of Essex Insurance Company. Jurisdiction RELINQUISHED.

¶ 11 POPOVICH, J. files a Dissenting Opinion.

## DISSENTING OPINION BY POPOVICH, J.:

¶ 1 I agree with the majority opinion that the contract language is not ambiguous; however, I disagree with the majority that the exclusion precludes coverage under the facts of this case; instead, I believe that the plain and ordinary language of this provision renders it inapplicable and entitles Aqua Dry to coverage under these specific facts. Therefore, I would affirm the trial court's denial of Essex's motion for summary judgment and grant of Aqua Dry's motion for summary judgment. Accordingly, I must respectfully dissent.

¶ 2 The policy provision in question is stated as follows:

**Exclusion—Absolute Pollution:**

It is agreed this policy does not cover any claims arising out of:

\* \* \*

2. Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize in any way respond to, or assess the effects of pollutants; or

\* \* \*

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Essex Insurance Policy, Amendatory Endorsement (Complaint Exhibit B at 12).

¶ 3 The oil leak was the result of accidental damage done to an oil line by Aqua Dry's workers during the course of waterproofing a home. The clean up was not the result of a *request, demand, or order* that the company clean up the oil as part of its ordinary business activities, *i.e.*, waterproofing. As Aqua Dry was not requested, demanded, or ordered to clean up the oil, I would find that subsection 2(a)

would not apply. Further, Aqua Dry was not actively engaged in handling this "pollutant" when the leak occurred. Had the spill been the result of Aqua Dry actively handling the oil, then I believe that the pollution exclusion provision would apply. But, because the spill was a result of an accident that occurred during Aqua Dry's normal business activities, I would find that this exclusion does not apply and that Essex is responsible for reimbursing Aqua Dry for clean up costs.

¶ 4 I also would find that the trial court did not add *sua sponte* a requirement to the policy, *i.e.,* that the pollution must occur in the "ordinary course" of Aqua Dry's business, a requirement that was neither negotiated nor agreed to by the parties. My review of the trial court's opinion finds that the trial court was explaining why Essex's policy covers Aqua Dry by distinguishing between the accidental damage caused by the "pollutant" resulting from Appellee's normal work activity and the damage caused by Appellee *actively* handling the "pollutant," which the latter is not within Aqua Dry's normal work activity and is, therefore, excluded by the policy.

¶ 5 Accordingly, I would have affirmed the trial court's order that denied Essex's motion for summary judgment and granted Aqua Dry's motion for summary judgment. For these reasons, I respectfully dissent.